# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR11-4076-MWB |
| vs. | **REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |
| DANIEL LINDGREN, | |
| Defendant. | |

The defendant Daniel Lindgren is charged in an indictment with knowingly possessing and attempting to possess visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). *See* Doc. No. 2. Lindgren has filed a motion to suppress (Doc. No. 10) in which he asserts that statements he made to law enforcement officers during two interrogations, one in 2008 and a second in 2010, should be suppressed because he was not given *Miranda*[1] warnings before the interrogations. Doc. No. 10-1 at 3. The plaintiff (the "Government") has resisted the motion. Doc. No. 18. The Trial Management Order assigns motions to suppress to the undersigned to conduct any necessary evidentiary hearing, and to prepare a report on, and recommended disposition of, the motion. *See* Doc. No. 8, § IV.A.

On August 22, 2011, the court held a hearing on the motion. Assistant U.S. Attorney Timothy Duax appeared on behalf of the Government, and Lindgren appeared personally with his attorney, Michael Smart. The Government offered the testimony of Buena Vista County Deputy Sheriff Jeff Hansen and Federal Bureau of Investigation ("FBI") Special Agent Jonathan Moeller. Two exhibits were admitted into evidence: Gov't Ex. 1, a CD containing an audio recording of a part of Agent Moeller's interview of

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Lindgren on December 30, 2010, and Gov't Ex. 2, a partial transcript of that interview.[2] The motion now is now fully submitted.

## BACKGROUND

In September 2008, Lindgren left his computer with a friend who had agreed to download some music onto the computer. While working on the computer, the friend came across what he believed to be child pornography. He immediately called law enforcement, and Jeff Hansen, the then Chief of the Schaller, Iowa, Police Department, responded to the call and took possession of the computer. Hansen looked at images stored on the computer and concluded that they might be child pornography, so he sent the computer to the Iowa state lab for analysis.

On September 23, 2008, Lindgren saw Hansen at a grocery store in Schaller and inquired about when the computer would be returned to him. Hansen asked him to come to City Hall later that day so they could talk about it, and Lindgren agreed. That evening, Lindgren came to City Hall and spoke with Hansen. Lindgren and Hansen were the only people present. Hansen was in uniform and was wearing his gun. He sat behind a desk. Lindgren sat about 12 to 15 feet away. No *Miranda* warnings were given. At the outset, Hansen told Lindgren that he was not under arrest, but that he wanted to know about the child pornography on Lindgren's computer. Lindgren responded that he knew the images were on the computer, but they were in files that he had not viewed in a long time. At the end of the interview, Lindgren left. The interview lasted about ten minutes.

In 2010, the FBI became involved in the investigation, and Agent Moeller asked Hansen, now a deputy sheriff with the Buena Vista County Sheriff's Department, to arrange for Lindgren to come in for an interview. On December 30, 2010, Hansen called

---

[2] Because Agent Moeller's digital voice recorder ran out of memory before the conclusion of his interview, the recording and transcript only contain one hour and twenty-five minutes of the approximately two-hour interview on December 30, 2010.

2

Lindgren and asked him to come to the volunteer fire department adjacent to the city hall building to talk. Hansen did not inform Lindgren of the reason for the meeting or that Agent Moeller would be present. Lindgren agreed to meet at the fire station later that day.

The meeting took place in the back room of the fire station. Lindgren sat closest to the door, which remained open during the interview, while Hansen and Moeller sat facing the door across from him. No one else was present. Moeller was casually dressed and not armed. Hansen was dressed in uniform, and also was unarmed. Moeller informed Lindgren that he was an FBI aagent. Lindgren was not informed that the interview was being recorded, and he was not given the *Miranda* warnings.

At the beginning of the interview, Moeller said to Lindgren, "I want you to understand is [sic] that you are not under arrest and I just want to have a chance to sit and chat with you." Gov't Ex. 1 at 00:01:46; Gov't Ex. 2 at REP_0027. Moeller told Lindgren that images of child pornography had been found on his computer and wanted to find out how the images got there. Moeller also told Lindgren, "You're not under arrest and when we're done, when it's all said and done here tonight, you're gonna walk right back out that door." Gov't Ex. 1 at 00:14:41; Gov't Ex. 2 at REP_0033. At the end of the interview two hours later, Lindgren was allowed to leave the building. Throughout the interview, Lindgren was never handcuffed or physically restrained in any way, and was free to move about the room.

## DISCUSSION

Lindgren contends the statements he made to Officer Hansen on September 23, 2008, and to Agent Moeller on December 30, 2010, resulted from custodial interrogations conducted without his first being advised of his *Miranda* rights. Doc. No. 10-1, p. 3-5. The Government concedes Lindgren was not given the *Miranda* warnings, but argues that

*Miranda* does not apply because Lindgren was not in custody when he made the statements.

Because Lindgren was never advised of his *Miranda* rights, if his statements were the product of a custodial interrogation, they would have to be suppressed. *See, e.g.*, *Oregon v. Elstad*, 470 U.S. 298, 309, 105 S. Ct. 1285, 1293 (1985) (*Miranda* requires that an unwarned custodial admission be suppressed); *United States v. Vega-Rico*, 417 F.3d 976, 981 n.2 (8th Cir. 2005) (Bye, J., concurring) ("Unwarned questioning is . . . a violation of the *Miranda* warnings designed to protect Fifth Amendment rights."). On the other hand, if Lindgren was not in custody when he made the statements, the statements should not be suppressed. Thus, the determinative question is whether Lindgren was in custody when he made the statements.

A person is "in custody" when he is formally arrested or when his freedom of movement is restrained to a degree equivalent with formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (per curiam). "[W]hether a suspect is 'in custody' is an objective inquiry." *J.D.B. v. North Carolina*, 564 U.S. ___, 131 S. Ct. 2394, 2402 (2011). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *Id.* (quoting *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995)) (internal quotation marks omitted). "Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Id.* (quoting same); *see also United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc). "Rather than demarcate a limited set of relevant circumstances, we have required police officers and courts to examine all of the circumstances surrounding the interrogation, including any circumstance that would

have affected how a reasonable person in the suspect's position would perceive his or her freedom to leave." *J.D.B.*, 131 S. Ct. at 2402 (internal citation and quotation marks omitted). "The test, in other words, involves no consideration of the 'actual mindset' of the particular suspect subjected to police questioning." *Id.*

In *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990), the court identified six factors to consider in determining whether an individual is in custody for the purposes of *Miranda*:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

The first three factors tend to mitigate the existence of custody, while the last three tend to aggravate it. *United States v. Boslau*, 632 F.3d 422, 427 (8th Cir. 2011). "There is no requirement . . . that the *Griffin* analysis be followed ritualistically in every *Miranda* case." *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). "When the factors are invoked, it is important to recall that they are not by any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *Id.* "The ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." *Id.* at 828; *see also LeBrun*, 363 F.3d at 720. "The most obvious and effective means of demonstrating that a suspect has not been 'taken into custody or otherwise deprived of . . . freedom of action,' is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *Griffin*, 922 F.2d at 1349

(alteration in original) (internal citation omitted) (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612).

After examining the totality of the circumstances in the present case, the court finds that Lindgren was not in custody on either September 23, 2008, or December 30, 2010, when he was interviewed by Officer Hansen and Agent Moeller; therefore, the fact that *Miranda* warnings were not given before these interviews does not bar their admissibility.

The first factor to be considered is whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest. *Griffin*, 922 F.2d at 1349. Here, it is undisputed that Lindgren was informed during both interviews that he was not under arrest. At the conclusion of both interviews, Lindgren was allowed to leave.

Lindgren maintains that his interviews with Officer Hansen and Agent Moeller were custodial interrogations because, although he was advised on both occasions that he was not under arrest, he was never told he had the right to terminate either interview at will or to refuse to answer Hansen's and Moeller's questions. "That a person is told repeatedly that he is free to terminate an interview is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Czichray*, 378 F.3d at 826. However, the touchstone of the court's inquiry remains whether Lindgren was restrained as though he were under formal arrest, *see LeBrun*, 363 F.3d at 720, so the failure of Officer Hansen and Agent Moeller to inform Lindgren that he was free to leave and to refuse to answer questions is not dispositive. *See United States v. Flores-Sandoval*, 474 F.3d 1142, 1147 (8th Cir. 2007) (although defendant was not informed that he was free to leave, he had been released from jail and was free to leave, he voluntarily replied to the questions posed to him, and there was no evidence that defendant's responses were coerced through physical or verbal coercion; therefore, defendant was not in custody for *Miranda* purposes); *United States v. Wallace*, 323 F.3d 1109, 1111-14 (8th Cir. 2003)

6

(defendant was not in custody for *Miranda* purposes even though she was told neither that she was free to leave nor that she did not have to participate in interviews with FBI); *see also Yarborough v. Alvarado*, 541 U.S. 652, 655-59, 663-65, 124 S. Ct. 2140, 2144-46, 2149-50 (2004) (where police initiated two-hour interview of suspect in police station, did not tell suspect he was free to leave, and engaged in "pretty friendly conversation" during interview, state court was clearly "reasonable" in concluding that suspect was not in custody).

The second *Griffin* factor looks to whether the suspect possessed unrestrained freedom of movement during the questioning. *Griffin*, 922 F.2d at 1349. Lindgren was neither handcuffed nor physically restrained in any way during either interview, which supports a conclusion that he was not in custody. *See, e.g.*, *United States v. Muhlenbruch*, 634 F.3d 987, 995-97 (8th Cir. 2011); *United States v. Black Bear*, 422 F.3d 658, 662-63 (8th Cir. 2005); *United States v. Brown*, 990 F.2d 397, 400 (8th Cir. 1993).

The third factor identified in *Griffin* is whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities. "[W]hen the confrontation between the suspect and the criminal justice system is instigated at the direction of law enforcement authorities, rather than the suspect, custody is more likely to exist." *Griffin*, 922 F.2d at 1351. On September 23, 2008, Lindgren contacted Officer Hansen in person to ask about his computer, and he accepted Officer Hansen's invitation to meet at city hall later that evening. Lindgren thus both initiated contact with Officer Hansen and voluntarily acquiesced to his questioning. On December 30, 2010, at Deputy Hansen's request, Lindgren agreed to meet at the fire station, although he never asked about the purpose of the meeting and was never told that Agent Moeller would be there. *Cf. United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006) (concluding that defendant neither initiated contact with police nor voluntarily acquiesced to questioning because defendant's parole officer ordered defendant to talk to police chief; "[w]hile a defendant does not need

to be enthusiastic about an interview for us to conclude that he voluntarily acquiesced, we think it clear here that [the defendant] was responding to pressure"). *But see United States v. Mottl*, 946 F.2d 1366, 1370 (8th Cir. 1991) (FBI agent initiated contact with defendant by asking him to agree to questioning, "a factor which weighs in favor of finding custody under *Griffin*"). The court finds that, on balance, Lindgren voluntarily acquiesced to questioning and concludes that this factor also weighs in favor of a finding that the interviews took place in a noncustodial setting.

The fourth *Griffin* factor requires the court to determine whether Officer Hansen and Agent Moeller employed strong arm tactics or deceptive stratagems during questioning. *Griffin*, 922 F.2d at 1349. In this case, neither Officer Hansen nor Agent Moeller raised their voices or physically or verbally intimidated Lindgren during their interviews. *See, e.g.*, *Brown*, 990 F.2d at 400. Neither Deputy Hansen nor Agent Moeller was armed during the December 30, 2010, interview, and Hansen did not brandish his weapon when he interviewed Lindgren on September 23, 2008. Further, during the December 30, 2010, interview, Agent Moeller spoke to Lindgren in a conversational manner, and the interview was cordial and professional. There is no evidence in the record that either Officer Hansen or Agent Moeller used any psychological ploys or deceptive stratagems during their interviews with Lindgren. *See id.* Furthermore, Lindgren's interview with Officer Hansen lasted about ten minutes, and his interview with Agent Moeller lasted about two hours, demonstrating a lack of strong arm tactics by either law enforcement officer. *See United States v. Plumman*, 409 F.3d 919, 925 (8th Cir. 2005) (finding defendant not in custody although FBI interview "lasted a considerable period of time, an estimated three and one-half hours without intervening breaks"); *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985) (finding that defendant's interview was noncustodial because "it does not appear that any strong arm tactics were used. The period of questioning lasted some forty-five minutes to two hours, certainly not a marathon

8

session designed to overcome [the defendant's] will."). Accordingly, this factor also weighs in favor of a finding that Lindgren was not in custody during either interview.

The fifth *Griffin* factor requires the court to determine "whether the atmosphere of the questioning was police dominated." *Griffin*, 922 F.2d at 1349. In making this determination, the court examines such factors as the length and place of the interview. *Brown*, 990 F.2d at 400. Lindgren contends that his interview on September 23, 2008, with Officer Hansen at the city hall building took place in a police-dominated atmosphere because the Schaller Police Department essentially conducts its business there. However, "*Miranda* warnings need not be imposed simply because the questioning takes place in a police station." *United States v. Galceran*, 301 F.3d 927, 931 (8th Cir. 2002) (per curiam) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977)). Rather, Lindgren's voluntary agreement to meet Officer Hansen at the city hall building and the ten-minute duration of the interview indicate a lack of police domination. *See id.* at 930-31 (finding that setting of defendant's interview with police "was not police dominated, even though the interview took place at a police station. The interview was not held in the station's holding cell area normally used for custodial interrogations, [the defendant] voluntarily agreed to appear for questioning at the station, and the ninety-eight minute length of the interview does not indicate police domination."); *see also Wallace*, 323 F.3d at 1113 (questioning of defendant was not police dominated because it occurred at her workplace, "a location familiar to [the defendant] and a place where she would be comfortable and less threatened"); *Brown*, 990 F.2d at 400 (interview of defendant took place at a residence, where defendant could feel comfortable, as opposed to a police-operated facility, such as a jail); *United States v. Goudreau*, 854 F.2d 1097, 1098 (8th Cir. 1988) (interview held in building housing defendant police officer's chief of police and not in an FBI facility; therefore, defendant was not in custody during interview, and *Miranda*

warnings were not required). Thus, Lindgren's two interviews were not in a police-dominated atmosphere. Accordingly, this factor also weighs against a finding of custody.

The sixth and final *Griffin* factor is whether the suspect was arrested. *Griffin*, 922 F.2d at 1349. "Lack of arrest is a 'very important' factor weighing against custody." *Galceran*, 301 F.3d at 931. Unlike the defendant in *Griffin*, Lindgren was not placed under arrest at any point during, or at the conclusion of, either interview. Rather, at the end of each interview, Lindgren left the premises. The court finds that this factor also weighs in favor of a finding that the interviews took place in a noncustodial setting.

Considering the totality of the circumstances, Lindgren was not in custody during either interview. Therefore, the fact that *Miranda* warnings were not given does not bar the use of these interviews at trial.

Accordingly, the undersigned finds Lindgren's statements should not be suppressed, and RESPECTFULLY RECOMMENDS that his motion to suppress be **denied**. Objections to this Report and Recommendation must be filed by **September 6, 2011**. Responses to objections must be filed by **September 13, 2011**.

IMPORTANT NOTE: Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **August 29, 2011, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>**. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 25th day of August, 2011.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT